# WALTER L. PECK *et al.*

*v.*

# THE BRIGHTON COMPANY.

1. FORFEITURE OF CONTRACT—*vendor must first offer to perform if all the payments are due.* Where time was made of the essence of a contract for the sale of real estate, and it was provided that the vendor might declare a forfeiture for default in making payments when due, and the vendor never exercised his right to declare a forfeiture in his lifetime, though the payments had all matured, and after his death his heirs declared the contract forfeited for non-payment, it not appearing that they were prepared to make the conveyance to the vendee, it was *held,* that as the payment of the purchase money and the making of the conveyance were concurrent acts, the heirs of the vendor could not legally declare the forfeiture without showing that they offered to convey the land, or that they were ready and able to convey as required by the contract.

2. Where the payment of the purchase money and the making of a conveyance are concurrent acts, the vendor, or his heirs after his death, have no power to declare a forfeiture of a contract of sale of land, unless they at the time are ready and have the ability to convey according to its terms.

3. SAME—*how readiness to perform should be shown.* Where the vendor of land is dead, and the last installment of the purchase money is due, under a contract making time of the essence of the contract, and a failure to pay at the time when due ground of forfeiture, a deed should be executed by the heirs and widow of the vendor and tendered to the purchaser, and payment demanded, and on refusal to pay, the heirs may declare a forfeiture.

4. SPECIFIC PERFORMANCE—*laches.* Although the purchaser of land may be chargeable with *laches* in performing on his part by making payment, yet if his *laches* is waived by the vendor in his lifetime, and, on bill for specific performance against his heirs, they do not set up and

insist on his *laches* in defense, but rely upon their right to declare a forfeiture under the terms of the contract, which they were not in a position to enforce, a specific performance of the contract may be had.

Appeal from the Superior Court of Cook county; the Hon. Joseph E. Gary, Judge, presiding.

Mr. J. V. Le Moyne, and Mr. Joseph E. Lockwood, for the appellants.

Messrs. Dent & Black, for the appellee.

Mr. Justice Craig delivered the opinion of the Court:

This was a bill in equity, filed by The Brighton Company against appellants, the heirs at law of P. F. W. Peck, to enforce the specific performance of a written contract, by which Peck, in his lifetime, sold a certain lot in the city of Chicago, to Nicholas P. Iglehart.

The contract, as shown by the record, bears date Nov. 1, 1857, by which Peck sold the lot to Iglehart for $3375, payable as follows : cash, $375 ; $1500 the 29th of November, 1857 ; $375, April 28, 1858 ; $375, Oct. 29, 1858 ; $375, April 28, 1859, and $375, Oct. 29, 1859. Notes were given for the payments, with ten per cent interest after due. The contract provided that Iglehart should pay all taxes assessed upon the property after 1854 ; that upon performance of the contract by Iglehart, Peck should convey the premises by deed, with covenants of warranty against his own acts. It was further provided, that in case of default of the payments by Iglehart, Peck had the right to declare the contract forfeited, and retain all payments made thereon.

There was credited upon the $1500 note, $200, Dec. 12, 1857, $300 Jan. 6, 1858.

Peck died, October, 1871, intestate. The contract and notes were found in an envelope marked, N. P. Iglehart, among other papers of deceased. No other writing or papers were found in relation to this transaction.

On the 18th of January, 1868, Iglehart conveyed the property to Woodward, and on the 4th of May, 1870, Woodward conveyed to appellee. It also appears that Iglehart took possession of the property soon after he made the purchase, and he and his grantees have occupied it ever since, paid the taxes, and made improvements to the value of $3000.

There is no evidence whatever that Peck in his lifetime declared a forfeiture of the contract, or took any steps in that direction.

The appellants called upon Iglehart for payment of the notes, and he declined payment, insisting that they had been paid to Peck in his lifetime. On the 4th day of March, 1872, they served a notice upon him that the contract was forfeited. On the same day, a deed was demanded of appellants, and a tender of $6000 made them. The tender was also renewed on the day following.

The Superior Court, upon the evidence, decreed that appellee should pay appellants $5343.93, the balance due upon the contract, and that appellants should convey the premises.

It is claimed by appellants that they had the right, and did forfeit the contract, and that the decree compelling a specific performance is erroneous. It is not pretended that Peck, in his lifetime, took any steps to declare the contract forfeited, or that he ever regarded the contract in any other light than as being in full force and effect. Iglehart and his grantees occupied, controlled and improved the property in all respects as owners, without objection from Peck.

There can be no doubt but time was of the essence of the contract, and it is clear, by the terms of the contract, Peck had the right to declare a forfeiture, on default of payment by Iglehart. It is equally clear that appellants, as heirs of Peck, under the contract, had the right of forfeiture, but the question for determination is, whether they have exercised that right in a legal and equitable manner, and in such a way as a court of equity can sanction, and sustain their acts in that

regard. At the time appellants undertook to terminate the contract the whole of the purchase money was due. The conveyance of the land, and the payment of the balance of the purchase money, were then concurrent and dependent acts. Had appellants undertaken to enforce payment of the purchase money by suit at law, they could not have obtained judgment without first tendering a deed for the premises, executed by the widow and heirs at law of P. F. W. Peck, and this is upon the principle that, before they could enforce the contract, they must show that they were ready and willing and had the ability to comply with it.

It does not appear that appellants have ever offered Iglehart or his grantee a deed of the premises, neither is it shown that they could make a deed, conveying as required by the contract.

Peck, at the time of his death, left a widow, who was a necessary party to a deed to convey the title he had contracted to Iglehart. While it is true she joined in a notice of forfeiture served upon Iglehart, yet it nowhere appears that she was willing to join with the heirs in a deed to convey the property. On the contrary, she had a direct interest in having the contract forfeited, in order that she could hold dower in the premises.

We think it is a clear proposition that appellants had no power to forfeit the contract, unless they at the time were ready and had the ability to convey according to its terms. *Bishop* v. *Newton,* 20 Ill. 178; *Brown* v. *Cannon,* 5 Gilman, 174; *Baker* v. *Bishop Hill Colony,* 45 Ill. 270.

How should appellants have shown that they could convey, and were ready so to do? The answer to this is obvious. A deed should have been executed by them and the widow, and tendered to Iglehart, and payment demanded. Had Iglehart refused to pay and accept the deed, then they might clearly have declared the contract forfeited, and terminated it. *Mix* v. *Beach,* 46 Ill. 311.

In the case last cited, the court, in discussing this question, say : " Had Mix procured a conveyance and tendered a deed, or perhaps only notified Beach of the fact, and the latter had failed to make payment, then he would have been in default. The doctrine of equity is compensation, and not forfeiture, and in a case where, as in the present, the party claiming the forfeiture was himself in default, or unable to perform his part of the agreement, a court of equity will not rescind the agreement." So, in this case, as appellants have failed to show that they were ready and had the ability to perform the contract by the tender of a deed, they were in no position to insist upon a forfeiture of it, and their attempt to terminate the contract can not be regarded as legal or binding on Iglehart.

The authorities cited by the counsel for appellants on the question of forfeiture, have no application here, for the reason that appellants failed to show they and the widow of Peck were ready and offered to convey at the time the attempt was made to forfeit the contract.

The only remaining question to be considered is, the contract not having been forfeited, was appellee entitled to a decree for specific performance?

It is not claimed by appellants, either by their answer to the bill, or in their argument, that *laches* is to be imputed to Iglehart or his grantee. They do not pretend that it would not have been timely for Iglehart to have tendered the purchase money to Peck at any time prior to his death, or to his heirs afterwards, and before they declared a forfeiture, and thus secured a conveyance of the property.

They rely, as we understand their position, solely upon the strict terms of the contract, authorizing a forfeiture for non-payment, which, when followed by the declaration of forfeiture by them, terminated the contract, and the right of Iglehart or his grantee to enforce it.

It is a conceded fact that Iglehart did not pay promptly ; that a long time was suffered by him to elapse in which he

should have performed on his part, and which under ordinary circumstances would justify a court of equity in refusing a specific performance of the contract; but this delay in payment seems to have been acquiesced in and overlooked by Peck.

The notes were drawn to bear interest after maturity, which would seem to imply that Peck did not expect to enforce payment promptly. Two payments were made and accepted on the $1500 note after it became due. Peck saw Iglehart and his grantee using and improving the property, and in all respects treating it as their own, and no objection is made by him, or disapprobation expressed.

No efforts whatever were made by Peck to obtain payment, and although time was of the essence of the contract, this, by his silence and inaction, must be regarded as waived. *Murphy* v. *Lockwood*, 21 Ill. 611; *Steele* v. *Biggs*, 22 Ill. 654.

The prompt payment having been waived by Peck, in his lifetime, and appellants having failed to legally forfeit the contract, all the facts considered, we think the decree should be affirmed.

*Decree affirmed.*