[Civ. No. 2074. Third Appellate District.—March 1, 1920.]

## E. J. GENEREUX et al., Appellants, v. RICHFIELD OIL COMPANY (a Corporation), Respondent.

[1] CONTRACTS — FAILURE TO EXACT PROMPT PAYMENT — WAIVER OF RIGHTS UNDER SUBSEQUENT CONTRACT.—The fact that defendant had delivered fuel oil to plaintiffs under a contract between them and another oil company and accepted delayed payment therefor would not establish a waiver of its right to cancel, for failure to make payments promptly, a contract between it and the plaintiffs for the furnishing of fuel oil commencing with the termination of the former contract.

[2] ID.—WAIVER—OTHER TRANSACTIONS—IMMATERIAL CONDUCT.—The conduct of a party that will operate as a waiver of the provision of a contract giving him the right to cancel the same upon the failure of the other party thereto to make payments promptly as therein provided is his conduct with reference to that particular contract and not to some other transactions.

[3] ID.—BUSINESS CHARACTER—IMMATERIALITY OF.—A man's general business character, as being that of one who does not insist upon strict performance of contracts made with him, cannot be invoked to prove that he has waived the provisions of a particular contract.

APPEAL from a judgment of the Superior Court of Los Angeles County. Curtis D. Wilbur, Judge. Affirmed.

The facts are stated in the opinion of the court.

H. E. Barbour and Walter S. Clayson for Appellants.

James, Smith & McCarthy for Respondent.

ELLISON, P. J., *pro tem.*—On the eighteenth day of December, 1915, the plaintiffs and the defendant entered into a written contract in writing by which it was agreed that the defendant would sell, and the plaintiffs would buy all the gas engine fuel oil of a gravity of forty to forty-four degrees, which plaintiffs might require in their business or pumping plant in Riverside County, California, for a period of two years, commencing May 17, 1916, and ending May 16, 1918. The price agreed upon was one dollar and eight cents per barrel of forty-two gallons each.

The contract provided that payments should be made on the 15th of each month for all goods delivered during the previous calendar month. It also contained the following: "If payments are not made as specified, the seller shall have the option of canceling this contract." Pursuant to the terms of the contract the defendant delivered to the plaintiffs during the month of June, 1916, oil amounting at the contract price to $401.76. On the seventeenth day of July, 1916, no payment having been made by the plaintiffs to the defendant for the oil delivered in the month of June, the latter sent a telegram to the plaintiffs, as follows: "Engine fuel oil contract, dated December 18, 1915, is hereby canceled for failure to make payment on the 15th of July for deliveries for previous calendar month."

Thereafter, though requested by the plaintiffs, the defendant refused to make any further deliveries of oil under the contract. Whereupon the plaintiffs brought this action to secure damages for failure of defendant to furnish them fuel oil. Findings and judgment were in favor of the defendant and the plaintiffs appeal.

The decision of the court was founded on the express terms of the contract wherein the option was given the defendant to cancel it if payments were not made according to the terms thereof. Appellants claim that defendant was not justified in availing itself of this provision of the contract because by its long-continued course of business with

the plaintiffs it had waived it, and before it could avail itself of it defendant should have given plaintiffs notice that they would be held in the future strictly to the terms of the contract in this regard.

It appears that prior to the execution of the contract of December 18, 1915, the plaintiffs had been supplied with oil under a contract between them and the General Petroleum Company. Under that contract deliveries were to begin on the fifteenth day of May, 1914, and end on the fifteenth day of May, 1916. Under that contract much oil was delivered, but, it seems, never paid for when due and payable. By some arrangement, which does not clearly appear, after this contract was executed, the defendant delivered oil to the company and collected the bills for it instead of the General Petroleum Company. What the arrangement was between the defendant and the General Petroleum Company which permitted or authorized these acts by defendant is not made to appear.

The defendant continued after December, 1915, to collect of plaintiffs for oil delivered under the General Petroleum Company contract until May 17, 1916, when deliveries began under its own contract. During this period the plaintiffs were always late in making their payments and the defendant was constantly reminding them of it. Indeed, so remiss were they that in one letter, that of May 8, 1916, the defendant wrote, after referring to a long overdue account: "We beg to notify you that unless we receive a remittance from you covering the above account by the 15th of this month we shall take whatever steps we consider necessary to enforce collection." This letter was dated only a week before deliveries were to begin under the present contract.

There are several considerations that lead us to the conclusion that defendant had not waived its right to insist upon the terms of the contract being observed and to cancel it if payments were not made when due. The parties had never done business under any other contract executed between them. As to the General Petroleum Company contract, as observed by the learned trial judge: "It does not appear that the defendant took an assignment of the contract in question and it is a matter of doubt, under the evidence, whether or not the defendant had a right to exercise the option mentioned in the contract." Between the date of

the contract on which this suit is brought and the time deliveries were to begin under it, the defendant had been put to very much annoyance and trouble in getting payments from plaintiffs, even to the extent of threatening legal proceedings, as appears from the letter above quoted. It was, probably, this unpleasant experience that determined it to insist on prompt payments for all deliveries that might be made under the contract it had entered into, to permit no delays that might thereafter be claimed as a waiver of the terms of the contract as to payment.

[1]   Without discussing any other phase of the case, we think it sufficient to hold, as we do, that the accepting by defendant of delayed payment for oil purchased under the former contract (the General Petroleum Company) was not a waiver of any of its rights under the contract it entered into with the plaintiffs in December, 1915.

The cases which hold that a party to a contract which provides that payments shall be made to him at certain times waives his right to cancel the contract for failure to pay promptly by accepting delayed payments all proceed upon the principle that by his course of conduct he has induced the other party to the contract to believe that he will not be held strictly to the terms of the contract as to payments. After such a course to suddenly cancel the contract, without any notice of a change of attitude, is in the nature of a fraud upon the other party. Some cases place it upon the ground of estoppel. The rule is stated in Pomeroy on Contracts, section 294 (quoted with approval in *Boone* v. *Templeman,* 158 Cal. 295, [139 Am. St. Rep. 126, 110 Pac. 948]), as follows: "The one entitled to insist upon a punctual performance by the other or else that the agreement be ended, may waive his right and the benefit of any objection which he might raise to a performance after the prescribed time, either expressly or by his conduct; and his conduct will operate as a waiver when it is consistent only with a purpose on his part to regard the contract as still subsisting, and not ended by the other party's default." And, again, in the same case, it is said: "Where a forfeiture has been practically waived by partial payments by the vendee after the time prescribed, the vendee cannot then suddenly stop short and insist upon a forfeiture for the nonpayment of the arrears remaining unpaid, with-

out any previous notice of the intention to do so if the arrears are not paid.''

[2]   The conduct of a party that will operate as a waiver of the provision of the contract as to payments is with reference to that particular contract and not to some other transactions.   No conduct of the defendant as to this contract ''is consistent with a purpose on his (its) part to regard the contract as still subsisting and not ended by the other's default.''   It never accepted any overdue payments under it, never said or did anything in reference to it to cause the plaintiffs to believe that defendant had or would waive any of the provisions of the contract.   We know of no principle of law and have found no decision holding that because a party by his conduct waives the provisions of one contract, therefore he has waived or will waive the provisions of another and independent contract.

[3]   A man's general business character, as being that of one who does not insist upon strict performance of contracts made with him, cannot be invoked to prove that he has waived the provisions of a particular contract.

The facts that it had had trouble in getting payments made on the other contract, that it accepted payments after they were due, that plaintiffs were so remiss that it had to threaten legal proceedings, instead of showing an intent not to insist on prompt payments after the contract of December, 1915, became effective, would seem to suggest a good reason for the opposite course, and would seem to suggest the wisdom of its so acting under this contract as to prevent the plaintiffs from ever claiming a waiver of any of its provisions.

The plaintiffs, for some reason, must, at least, have suspected that this would be the attitude of the defendant, else why write in a letter of May 11, 1916: ''All future business with you will be done strictly in accordance with the terms of said contract''?

A careful reading of the record fails to convince us that defendant by any act waived the right given it by the contract to cancel it for failure to pay for oil at the times fixed by it.

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.